## Case No. 11,134.

### PICQUET v. SWAN. et al.

[5 Mason, 35.] [1]

Circuit Court, D. Massachusetts. May Term, 1828.

FOREIGN ATTACHMENT—NON-RESIDENT CITIZEN—JURISDICTION—JUDICIARY ACT OF 1789—STATE LAWS.

1. Where a party defendant is a citizen of the United States, and resident in a foreign country, not having any inhabitancy in any state of the Union, the circuit courts of the United States have no power to maintain jurisdiction over him in a suit brought by an alien against him, although he has property within the district, which may be attached.

[Cited in Lincoln v. Tower, Case No. 8,355; Day v. Newark India-Rubber Manuf'g Co., Id. 3,685; Prentiss v. Brennan, Id. 11,385; Chittenden v. Darden, Id. 2,688. Quoted in Galpin v. Page, 18 Wall. (85 U. S.) 367. Cited in Darst v. Peoria, 13 Fed. 564; Romaine v. Union Ins. Co., 28 Fed. 639.]

[Cited in Cahoon v. Harlow, 7 Allen, 153; Dearing v. Bank of Charleston, 5 Ga. 497; James v. Townsend, 104 Mass. 372; Moore v. Wayne Circuit Judge, 55 Mich. 87, 20 N. W. 803. Cited in brief in Putnam v. McDougall, 47 Vt. 481. Cited in Salem v. Eastern R. R., 98 Mass. 451; State v. Richmond, 26 N. H. 242; State v. Boyd, 31 Neb. 715, 48 N. W. 739, 51 N. W. 602; Turrill v. Walker, 4 Mich. 182.]

2. The judiciary act of 1789, c. 20 [1 Stat. 73], does not contemplate compulsive process

against any person in any district, unless he be an inhabitant of, or found within, the same district at the time of serving the writ.

[Cited in Peters v. Rogers, Case No. 11,033; Re Metzger, Id. 9,511; Day v. Newark India-Rubber Manuf'g Co., Id. 3,685; Saddler v. Hudson, Id. 12,206; Pennoyer v. Neff, 95 U. S. 724; Galpin v. Page, Case No. 5,-206; New England Ins. Co. v. Detroit & C. Steam Nav. Co., Id. 10,154; Paine v. Caldwell, Id. 10,674; Atkins v. Fibre Disintegrating Co., Id. 602; Tioga R. Co. v. Blossburg & C. R. Co., 20 Wall. (87 U. S.) 147; Wilson v. Pierre, Case No. 17,826; Myers v. Dorr, Id. 9,988; Treadwell v. Seymour, 41 Fed. 580.]

[Cited in brief in Comstock v. Holbrook, 82 Mass. 113. Quoted in Dearing v. Bank of Charleston, 5 Ga. 497. Cited in Lance v. Dugan (Pa. Sup.) 13 Atl. 492.]

3. The act of Massachusetts of 1797 (chapter 50), prescribing the modes of serving process, does not apply to a case where the defendant has been an inhabitant, but at the time of the suit brought has his actual domicil in another state or country.

4. Where an alien sues in the circuit court, the defendant must be described as a citizen of some particular state. Stating him to be a citizen of the United States is not sufficient.

[Cited in Cissel v. McDonald, Case No. 2,729.]

[5. Cited in Clark v. Sohier, Case No. 2,835, to the point that the laws of the states must govern as to rights when the acts of congress do not provide exclusively on the subject.]

[This was a proceeding by Antonio F. Picquet, administrator, against James Swan and trustees.]

The trustees were discharged at the last term [Case No. 11,133], and at this term, being the third term since the commencement of the suit, a motion was made, that the defendant be defaulted for his non-appearance, and judgment be given against him for such default according to the usual practice of the state courts of Massachusetts.

J. B. Davis and J. T. Austin, for plaintiff.

W. Sullivan, as amicus curiæ, e contra.

STORY, Circuit Justice. This suit was commenced by a writ, which is known in this state as the "trustee process," but is better known elsewhere as the "process of foreign attachment," and was returnable to May term, 1827, of this court. By the state laws it is a process equally applicable to cases, where the suit is against an inhabitant, and where it is against a non-resident, whether he has ever been an inhabitant or not. In the writ the parties are described as follows: The plaintiff as "of the city of Paris in the kingdom of France, an alien, and subject of his most Christian majesty the king of France, in his capacity as administrator," &c., and the defendant, as "now commorant of the city of Paris in the kingdom of France, of the city of Boston, in the commonwealth of Massachusetts, one of the United States of America, and a citizen of the said United States." The return of the marshal on the writ is as follows: "Boston, April 18, 1827. Pursuant hereunto I have attached all the real estate of the said James Swan lying and being in the district of Mass-

[1] [Reported by William P. Mason, Esq.]

achusetts, especially a lot of land in Boston in said district, bounded, &c., called the Washington Garden, &c., and summoned William Sullivan, Esq., agent for the said Swan, and on the same day I summoned the within named Sullivan, Otis, and Howard (the supposed trustees) to appear and show cause as within commanded, by leaving a true and attested copy of this writ at their last and usual places of abode. The said Swan has not been an inhabitant or resident within this district for three years last past."

At the last term the trustees summoned in the suit were duly discharged. [Case No. 11,-133.] The defendant has never appeared as a party to the suit; and it is now contended, that the plaintiff is entitled to consider him in default, and to have a judgment by default entered against him. That is the point, which has been argued, and is now to be decided by the court. I will briefly advert, in the first instance, to the local laws regulating this process, as they may be important to illustrate the conclusion, to which the court has arrived, and also more fully to explain .the grounds of the argument at the bar. The trustee process, under which the present suit is brought before the court, owes its origin to the act of 28th of February, 1795 (Act 1794, c. 65), which was a substitute for the provincial act of 32 Geo. II. c. 2, to enable creditors to receive their just debts out of the effects of their absent or absconding debtors. It provides, that "the officer to whom the writ is directed shall serve the same by attaching the goods and estate of the principal in his hands and possession of the value required, if so much may be found in his precinct, by reading the said writ to him, or by leaving an attested copy thereof at his last and usual place of abode, if he had been an inhabitant or resident within this commonwealth at any time within three years next before the suing out such writ, and by reading the same to each of the trustees, or by leaving an attested copy thereof at such trustees' usual place of abode; and in case the principal has not been an inhabitant or resident as aforesaid, a service made on the supposed trustee or trustees in manner as aforesaid, shall be deemed a sufficient service," &c. It further provides, that in case all the trustees are discharged, "the plaintiff may, notwithstanding, proceed against the principal to trial, judgment, and execution." A subsequent statute (Act 1798, c. 5) has however provided, that "in all such cases, the plaintiff shall not proceed in his suit against the principal, unless there shall have been such service of the original writ upon the principal as would have authorized the court to proceed to render a judgment against him. in an action brought and commenced in the common and ordinary mode of process." But the principal might voluntarily come into court and take upon himself the defence of the suit. In the very case before the court all the trustees have been dischar-

ged; so that it is necessary to ascertain what service would be sufficient to entitle the plaintiff to judgment in an action by the common and ordinary mode of process, which is, by our local laws, by a writ known by the name of a writ of "capias" or "attachment," and authorizing either an arrest of the person of the defendant, or an attachment of his goods or estate. The act of 17th of February, 1798 (Act 1797, c. 50), provides for the mode of service of this process. Of course it can be used as a capias, only when the party is found within the state. When used as an attachment, the officer attaches the goods or estate of the defendant and a summons in due form is to be delivered to him, or left at "his dwelling-house, or place of last and usual abode," fourteen days before the return day; and "in case the defendant was at no time an inhabitant or resident within this commonwealth," then such summons is to be left with his or her tenant. agent, or attorney,_&c.; otherwise the writ shall abate. There is also provision made in this act, that if the defendant is not an inhabitant or present in the state at the time of the service, and does not return before the time of trial, the court may continue the same to the next term upon a suggestion of the fact on the record. If at such term the defendant does not appear, and be so remote, that notice of the suit could not probably be conveyed to him during the vacancy, the court may continue the same to the next term, and no longer. After these two continuances, if he does not appear, judgment by default may be entered up against him. It is not material to follow up the proceedings consequent upon such judgment. But it may not be useless to add, that the trustee act of 1794 (chapter 65) adopts regulations of a similar nature, in substance, to them. Of their own force these processes and modes of service could have no validity in the courts of the United States. But by the act of congress of 29th of September, 1789, c. 21 [1 Stat. 93], the then existing forms of writs and modes of process (by which was meant modes of proceeding) in the supreme courts of the states, respectively. were adopted into the judicial proceedings of the courts of the United States; and by a subsequent act (Act 1792, c. 36 [1 Stat. 275]) the same forms were perpetuated, subject to the authority in the courts to alter and add to the same. in their discretion, so as to conform to the state jurisprudence. After the very elaborate expositions of this subject by the supreme court in Wayman v. Southard. 10 Wheat. [23 U. S.] 1, and United States Bank v. Halstead, Id. 51, it is unnecessary farther to discuss the nature and extent to which the state process applies in the courts of the United States. The state acts of 1795, c. 65; of 1797, c. 50; and of 1798, c. 5,—have never been adopted by any formal rule of the circuit court in this district; but they have constantly been used in it, both as to process

and service, ever since their first enactment; and must now be admitted to be of as high authority by usage, as if any promulgation by rule, however formal, had taken place. They can have no effect, where they contravene the positive legislation of congress; nor can they give a jurisdiction to this court, which it might not independently of them maintain. Where jurisdiction is given by any act of congress, this court may use the appropriate state process to enforce it. But the state laws can confer no authority on this court to extend its jurisdiction over persons or property, whom it could not otherwise reach.

Let us, then, first examine the existing legislation of congress on this subject. The constitution of the United States has, among other things, extended the judicial power to controversies between citizens of different states, and between citizens of a state and foreign citizens or subjects. The actual legislation of congress has not as yet been coextensive with this constitutional boundary of jurisdiction. The judiciary act of 1789 (chapter 20) provides, "that the circuit courts shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature where the matter in dispute, exclusive of costs, exceeds 500 dollars, and the United States are plaintiffs, or petitioners; or an alien is a party; or the suit is between a citizen of the state, where the suit is brought, and a citizen of another state." As to citizens, therefore, there exists no jurisdiction, unless either the plaintiff, or the defendant is a citizen of the state, where the suit is brought. As to aliens, by which must be understood, in the language of the constitution, "a foreign citizen or subject," the jurisdiction is in all cases given, where an alien is a party. In a subsequent part of the same section is the clause, which has been so much commented on at the bar. "But no person shall be arrested in one district for trial in another in any civil action before any circuit or district court. And no civil action shall be brought before either of said courts against an inhabitant of the United States by any original process in any other district than that, whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." It is observable, that the language is confined to original process, and does not apply to final process, or process of execution. If this clause had not been inserted, what would have been the legal operation of the other clauses of the act? A prior section had divided the United States into certain judicial districts, whose limits generally were coextensive with the territorial limits of a single state. Within these districts a circuit court is required to be held at certain times and places prescribed by the act. The circuit court of each district sits within and for the same, and is bounded by its local limits. In the exercise of jurisdiction within those limits, the general principles of law must be presumed to apply to them all. Whatever might be the extent of their jurisdiction over the subject matter of suits, in respect to persons and property, that jurisdiction is available only within the limits of the district. The courts of a state, however general may be their jurisdiction, are necessarily confined to the territorial limits of the state. Their process cannot be executed beyond those limits; and any attempt to act upon persons or things beyond them, would be deemed an usurpation of foreign sovereignty, not justified or acknowledged by the law of nations. Even the court of king's bench in England, though a court of general jurisdiction, never imagined, that it could serve process in Scotland, Ireland, or the colonies, to compel an appearance, or justify a judgment against persons residing therein at the time of the commencement of the suit. This results from the general principle, that a court created within and for a particular territory is bounded in the exercise of its power by the limits of such territory. It matters not, whether it be a kingdom, a state, a county, or a city, or other local district. If it be the former, it is necessarily bounded and limited by the sovereignty of the government itself, which cannot be extra-territorial; if the latter, then the judicial interpretation is, that the sovereign has chosen to assign this special limit, short of his general authority. It was doubtless competent for congress to have authorized original as well as final process, to have issued from the circuit courts and run into every state in the Union. But it has conferred no such general authority. In a single case only has it authorized—by the statute of 3d of March, 1797, c. 74 [Folwell's Ed., vol. 3, p. 423], § 6 [1 Stat. 515, c. 20]—writs of execution to run throughout the United States; and that is, upon judgments obtained for the use of the United States in any of the courts of the United States. By the act of 2d of March, 1793, c. 66 (22), § 6 [1 Story's Laws, 312; 1 Stat. 335], it has also authorized subpoenas for witnesses to attend the courts of the United States to be served in other districts within certain limited distances. And until a very recent statute—Act May 20, 1826, c. 123 [3 Story's Laws, 2034; 4 Stat. 184, c. 124]— no authority existed to serve writs of execution, in favour of private persons, in any other district, than that where the judgment was rendered, although both districts were within the territorial limits of the same state. This very course of legislation, during a period of almost forty years, demonstrates the understanding of congress, as well as of the profession, that the process of the circuit court could not be served in ordinary cases out of the limits of the judicial district for which it was established. My Brother Washington, in his able judgment in the case Ex parte Graham [Case No. 5,657], has gone largely into the considera-

tion of this doctrine; and I follow with undoubting confidence the whole course of his reasoning. I owe it, perhaps, as a matter of justice to myself to add, that the process in that case, from the circuit court of Rhode Island, was issued at the peril of the party, without any deliberate examination of the law on the part of the court, the party being anxious to take it, valere quantum valere possit. If, therefore, the restraining clause already mentioned were not in the eleventh section of the act of 1789 (chapter 20) I should be of opinion, for the reasons so forcibly given by my Brother Washington, that the exercise of the jurisdiction of the circuit courts by compulsive process, was essentially confined, by their very organization, within the limits of their respective districts. It would otherwise follow, that final process might in all cases run into every district of the Union, since the terms of the clause apply to original process only. Yet the professional opinion and practice, as well as the positive legislation of congress in the cases above mentioned, demonstrate, that the contrary is the true construction of the act.

The jurisdiction of the circuit court in this case, so far as it depends upon the citizenship and alienage of the parties, may for the present be assumed de bene esse to be complete. But this alone is not sufficient to give the court complete authority to proceed to judgment. There must exist other facts and circumstances as a just foundation of jurisdiction. Cases are familiar of actions, which cannot be maintained, although the parties are within the reach of process, from the nature and locality of the cause of action. Suits, which concern the realty, such as writs of entry, dower, ejectment, and trespass, quare clausum fregit, cannot be maintained in the circuit court unless the land lie within the district, although the party may reside there, and, in a personal view, the jurisdiction is unexceptionable. The reason is, that the title to real estate can by the general principles of law be litigated only in the state, where the land lies, and where the process may go to bind and reach the land, and enforce the title of the party. If, therefore, the land be sought, or in other respects the suit be purely local, it must be brought, where the law of the place acts on it directly. See Massie v. Watts, 6 Cranch [10 U. S.] 148. Collateral suits for other purposes, binding the conscience, or controlling the acts of the party personally, may be brought and decided elsewhere. Id. This principle is recognized at the common law; but it has, to a certain extent at least, a foundation also in universal jurisprudence. I have already intimated, that no sovereignty can extend its process beyond its territorial limits, to subject either persons or property to its judicial decisions. Every exertion of authority beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals. If a state

were to pass an act declaring, that upon personal notice of a suit brought against a foreigner, resident in a foreign country, proceedings might be had against him, and a judgment obtained in invitum, for aught I know, the local tribunals might give a binding efficacy to such judgments. But elsewhere they would be utterly void, as an usurpation of general sovereignty over independent nations and their subjects. Lord Ellenborough, in Buchanan v. Rucker, 9 East, 192, has put the case with great clearness and force. "Supposing," said he, "however, that the act had said in terms, that though a person sued in the island (of Tobago) had never been present within its jurisdiction, yet, that it should bind him, upon proof of nailing up the summons at the court door; how could that be obligatory upon the subjects of other countries? Can the island of Tobago pass a law to bind the rights of the whole world? Would the world submit to such a jurisdiction?" Nor would it in such a case vary the legal result, that the party had actual notice of the suit; for he is not bound to appear to it. No sovereign has a just right to issue such a notice, and thereby to acquire a jurisdiction to draw the party from his own proper forum ad alium examen. Where a party is within a territory, he may justly be subjected to its process, and bound personally by the judgment pronounced, on such process, against him. Where he is not within such territory, and is not personally subject to its laws, if on account of his supposed or actual property being within the territory, process by the local laws may by attachment go to compel his appearance, and for his default to appear, judgment may be pronounced against him, such a judgment must, upon general principles, be deemed only to bind him to the extent of such property, and cannot have the effect of a conclusive judgment in personam, for the plain reason, that except so far as the property is concerned, it is a judgment coram non judice. If the party chooses to appear and take upon himself the defence of the suit, that might vary the case, for he may submit to the local jurisdiction, and waive his personal immunity. Such appear to me to be the principles established by the better opinions in the cases cited at the bar, and particularly in Phelps v. Holker, 1 Dall. [1 U. S.] 261; Killburn v. Woodworth, 5 Johns. 37; Smith v. Brush, 8 Johns. 84; Fenton v. Garlick, Id. 151; Pawling v. Bird's Ex'rs, 13 Johns. 192; Borden v. Fitch, 15 Johns. 121; and Bissell v. Briggs, 9 Mass. 462. In the two last cases, the learned chief justices of New York and Massachusetts reasoned out the doctrine with great acuteness and ability. The principles of the common law (which are never to be lost sight of in the construction of our own statutes) proceed yet farther. In general, it may be said, that they authorize no judgment against a party, until after his appearance in court.

He may be taken on a capias and brought into court, or distrained by attachment and other process against his property to compel his appearance; and for nonappearance be outlawed. But still, even though a subject, and within the kingdom, the judgment against him can take place only after such appearance. So anxious was the common law to guard the rights of private persons from judgments obtained without notice, and regular personal appearance in court.

The conclusion, to be deduced from the foregoing considerations, which must necessarily have been in the contemplation of the framers of the judiciary act of 1789, is, that the whole structure of that act proceeded upon the supposition, that, independent of some positive provision to the contrary, no judgment could be rendered in the circuit court against any person, upon whom process could not be personally served within the district. This was the natural result of the principles of the common law in relation to jurisdiction and process. In this view of the matter, the clause in the eleventh section already cited was introduced, as my Brother Washington supposes it to have been, from abundant caution, to guard against every possibility of latent doubt. And it should be remembered in this connexion, that the process act of 1789 [1 Stat. 93,] which alone gave life to the state process in the United States courts, formed no necessary part of the system, and was brought forward by an independent and temporary statute.

Let us, then, consider, what is the true interpretation to be put upon this clause. It first provides, that "no person shall be arrested in one district for trial in another, in any civil action before a circuit or district court." So that it is clear, that the process of capias is limited to the local boundaries of the court, by which it is issued. It next provides, that "no civil suit shall be brought before either of said courts against an inhabitant of the United States by any original process in any other district than that, whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." Now the argument is, that this last provision applies only to persons, who, at the time of the suit are inhabitants of the United States. It is a restriction of the general authority of the courts to bring before them by original process any person, who, as a citizen or alien, was amenable by the general grant of jurisdiction to these courts. Swan was either an inhabitant of Massachusetts at the time, when the present suit was brought, or he was not. If he was an inhabitant, then the suit is brought in the proper district; if not an inhabitant, then the restriction is inapplicable to him. Such is the dilemma, into which the argument supposes the adverse party to be driven, and on which it seeks to suspend him. It appears to me, that such is not the true interpretation of the words of the clause. They admit of an interpretation, in my view, much more natural, and consonant with the principles of justice. The argument supposes, that as a general jurisdiction is given in cases, where an alien is party, if he is not an inhabitant of the United States, and has not any property within it, (for to this extent it must reach,) still he is amenable to the jurisdiction of any circuit court, sitting in any state in this Union. So that a subject of England, or France, or Russia, having a controversy with one of our own citizens, may be summoned from the other end of the globe to obey our process, and submit to the judgment of our courts. Such an intention, so repugnant to the general rights and sovereignty of other nations, ought not to be presumed, unless it is established by irresistible proof. My opinion is, that congress never had any such intention; that it presupposed, that no suit would lie against any person, who was not locally present, either as an inhabitant, or in transitu in the United States; and that it designedly enlarged the power to proceed in cases of inhabitancy, where the party happened at the time to be absent without any intentional change of domicil, as well as allowed it in any district, where the party might, at the time, be found. The words of the clause are, "against an inhabitant of the United States." But I lay no particular stress upon the word "inhabitant," and deem it a mere equivalent description of "citizen" and "alien" in the general clause conferring jurisdiction over parties. A person might be an inhabitant, without being a citizen; and a citizen might not be an inhabitant, though he retained his citizenship. Alienage or citizenship is one thing; and inhabitancy, by which I understand local residence, animo manendi, quite another. I read, then, the clause thus: "No civil suit shall be brought before either of said courts against an alien or a citizen, by any original process, in any other district than that, whereof he is an inhabitant, or in which he shall be found, at the time of serving the writ." It cannot be presumed, that congress meant to say, that if an alien or citizen were not an inhabitant of, or commorant in the United States, a suit might be maintained against him in any district, and process served abroad upon him, or a judgment given against him without any notice or process served upon him. If it be said, that process may be served upon his property within the district, what is to be done, when there is no such property to be found, or it is merely nominal? If in the latter cases an exception is to be implied upon general principles, why not in the former? The judiciary act of 1789 (chapter 20) has not provided for either case in terms; and the right to serve process upon the property of the party, and thereby to bring him into court, when an absentee, so as to bind that property, or him personally, by the judgment, is not a right growing out of the common law, but everywhere, at least in countries governed by the

common law, depends upon statute regulations. Looking, therefore, to the plain tenor of this act, and construing it by the real objects, which it avows, my judgment is, that it contemplates no effective exercise of jurisdiction by the circuit court, except in cases where the party defendant is an inhabitant of, or found within, such district, at the time of serving the writ. If no forms of process or modes of proceeding had been prescribed by any other law, I do not see how the courts could have exercised their jurisdiction at all, except by reference to writs, process, and service according to the common law, a construction, which seems naturally to flow from the provisions of the fourteenth section of the act.

The process acts of 1789 (chapter 21) and of 1792 (chapter 36), have prescribed the forms of process, and modes of service, to be according to the state jurisprudence. But they do not appear to me to be intended to enlarge the sphere of jurisdiction of the circuit courts. Whenever the person is an inhabitant of, or found within, the district, the proper writ may issue, and the process may be served against him, whether it be a capias, summons, attachment, or otherwise, as the local jurisprudence authorizes. I cannot judicially say, that the general phraseology of these process acts ought to receive a more extensive interpretation, so as to break down or interfere with the policy of the judiciary act of 1789 (chapter 20), founded, as it seems to me to be, in principles of public law, public convenience, and immutable justice. If the state jurisprudence authorizes its own courts to take cognizance of suits against non-residents, by summoning their tenants, attornies, or agents, or attaching their property, whether it be a farm or a debt, or a glove, or a chip, it is not for us to say, that such legislation may not be rightful, and bind the state courts. But when the circuit courts are called upon to adopt the same rule, it ought to be seen, that congress have, in an unambiguous manner, made it imperative upon them. There is no pretence to say, that the circuit court in this district has by its practice, or by rule, sanctioned such a proceeding. If such modes of service have in such cases been used, the matter has passed sub silentio, without any knowledge on the part of the court, which implied a sanction of it.

No case has been cited, in which the question has been brought directly before any court of the United States for a decision. In Hollingsworth v. Adams, 2 Dall. [2 U. S.] 396, there was a foreign attachment in the circuit court of Pennsylvania; but the principal debtor was an inhabitant of Delaware, and not found in Pennsylvania; and the court quashed the writ for want of proper jurisdiction. In Pollard v. Dwight, 4 Cranch [8 U. S.] 421, the plaintiffs were citizens of Massachusetts and Connecticut, and the defendants were citizens of Virginia, and not

found in the district of Connecticut, and were sued in a foreign attachment in the state court, and the cause removed by them into the circuit court for the district of Connecticut. The question was, whether they could be so sued. The supreme court held, that "by appearing to the action, the defendants in the court below placed themselves precisely in the situation, in which they would have stood, had process been served upon them, and consequently waived all objection to non-service of process." This was a strong case; for though the suit was between citizens of different states, yet within the terms of the eleventh section of the act of 1789, it was not a suit between a citizen of the state where the suit was brought (for the plaintiffs were partly citizens of Connecticut, and partly citizens of Massachusetts) and a citizen of another state. Shute v. Davis [Case No. 12,828], and Craig v. Cummins [Id. 3,331], turned on the very words of the statute just cited. The suit in the former case was brought in Pennsylvania between citizens of New York and New Jersey; in the latter, one of the defendants was a citizen of Pennsylvania, and the other not; but the contract being joint and, by the local law, capable of being pursued against one only, the severance was deemed complete by the return of non est inventus of the non-resident. Fisher v. Consequa [Id. 4,816], was a foreign attachment against a non-resident Chinese merchant; but there seems to have been a general appearance for him, and at all events no exception was taken on this particular point. In Bissell v. Horton [Id. 1,448], in the circuit court in Connecticut, the plaintiffs were described as partly citizens of Vermont, and partly citizens of Connecticut. The defendant was described as a citizen of New York, now dwelling in Hebron in Connecticut. The court held, that they had no jurisdiction, and on motion dismissed the suit. Mr. Justice Livingston said, "the plaintiffs are partly in Vermont and partly in Connecticut. They are not, therefore, citizens of Vermont within the constitution and laws of the United States. With regard to the defendant, it is admitted, that he now resides in Connecticut, and has resided here during the time, in which he has been in possession of the demanded premises, which clearly evinces a determination in him to remain here permanently." This case may, from the shape given to the opinion of the learned judge in the report, be open to some critical observation. Upon the motion to dismiss, the citizenship of the defendant in New York, as alleged in the writ, must have been taken to be true. The process was duly served upon him in Connecticut. And upon the authority of Pollard v. Dwight, 4 Cranch [8 U. S.] 421, the jurisdiction was maintainable; for the citizenship of one of the plaintiffs in Connecticut was there thought sufficient to bring the case within the act of con-

gress. I have not met with any other cases, in which the question has been judicially discussed, except Ex parte Graham [supra], already referred to, where the reasoning, so far as it bears at all on this subject, presents itself unfavourably to the maintenance of the present suit. If, therefore, I were called upon to decide this case exclusively upon principle, my judgment would lead me to adopt these conclusions: That by the general provisions of the laws of the United States, the circuit courts could issue no process beyond the limits of their districts. That independent of positive legislation, the process can only be served upon persons within the same districts. That the acts of congress, adopting the state process, adopt the forms and modes of service only so far as the persons are rightfully within the reach of such process, and did not intend to enlarge the sphere of the jurisdiction of the circuit courts. That the right to attach property to compel the appearance of persons can properly be used only in cases in which such persons are amenable to the process of the court in personam,—that is, where they are inhabitants, or found within the United States,—and not where they are aliens or citizens resident abroad at the commencement of the suit, and have no inhabitancy here.

There are two reasons, which have great weight with me in support of these positions. One is, that otherwise the judgments in the courts of the United States would not, in cases of non-residents, be binding, as general judgments in personam; but if at all, only as proceedings in rem to the extent of the property attached, whether it be a chip, or a bale of goods, upon the principles of the cases of Bissell v. Briggs, 9 Mass. 462; Buchanan v. Rucker, 9 East, 192; and other cases before mentioned. Another is, that the forms of process in Massachusetts, (which forms are made applicable by the acts of congress to the courts of the United States,) both in the common process and the trustee process, whenever goods or estate are attached, require a summons to be served on the party. In the trustee process, the words are, "We command you to attach the goods and estate of A. B. (the defendant) to the value of ——, and summons the said A. B. (the defendant), if he may be found in your precinct (district). to appear," &c. Not one word is stated in the writ itself, as to any summons, where the party is not found within the precinct or district of the officer. The mode of service in such cases, and in cases of non-residence generally, is prescribed by other distinct acts or sections of acts. So, that the exigency of the writ looks only to the fact of the party being found within the district; and unless the marshal is at liberty to make a service in a case and mode beyond the exigency of this writ, not expressly reached by the acts of congress, but dependent entirely upon state laws, made for local purposes, the service in cases of non-residence would be utterly void. The argument for the plaintiff is, that as the summons is authorized by law, it is sufficiently served by the marshal in any mode, within his district, which the local laws justify. Generally speaking, that may be true, where the party is within the district, or an inhabitant bound to obey the summons within the district, viis et modis prescribed by the law. The difficulty is, how to deal with cases, where the party is an alien, or a citizen of another state, not resident within any of the United States. Yet the state laws extend to all these cases equally with those, where the party is a non-resident citizen of the state, where the suit is brought. I know no principle, upon which the court can say, that the service as to the latter shall be good, and not as to the former; for in each case the sufficiency of the service of the summons must stand upon the same provisions of the state laws. Unless, therefore, the court can say, that an alien, who has never been within the United States, may be rightfully served with a summons or other process by any attachment of his property, however small, within the district, and be bound thereby to appear and submit to the jurisdiction of the court, or otherwise have a judgment against him in invitum, I do not perceive, how the present case can, on general principles, be maintained. If congress had prescribed such a rule, the court would certainly be bound to follow it, and proceed upon the law. The point of difficulty is, whether such a rule ought to be inferred from so general a legislation as congress has adopted, not necessarily leading to the conclusion, that such was the intent. It would seem strange, that a provision should be so solicitously made for persons inhabiting the country, that they should not be held amenable, except in the districts where they resided; and yet that no protection should be afforded to aliens or citizens, who were permanently domiciled abroad.

But supposing the preceding reasoning less well founded than, in my judgment, it seems to be; it remains to consider, whether, under the circumstances of this case, the service of the process was such, as by the local laws, would justify the judgment of default now asked of this court. We may lay out of the case all consideration of the service, so far as relates to the provisions of the trustee act of 1794 (chapter 65), because the trustees having been discharged, no judgment can, by the express provisions of the act of 1798 (chapter 5), be rendered against the principal, unless the service has been such, as would authorize the court to proceed to render judgment against him in an action commenced by the common and ordinary mode of process. The mode of service in the common process is provided for by the act of 1797 (chapter 50) already cited. In cases of attachment, a sum-

mons is required to be left at the "dwelling-house, or place of last and usual abode" of the defendant, and "in case the defendant was at no time an inhabitant or resident within this commonwealth, then such summons to be left with his or her tenant, agent, or attorney." It appears to me, that the plain intent of the statute is to apply the words of the first clause exclusively to cases, where the defendant was at the time of the suit an inhabitant or resident of the commonwealth, having a dwelling-house, or place of last and usual abode therein. Where a defendant has no such inhabitancy or residence, but has left the commonwealth, and changed his domicil, how can it be said, that he has a dwelling-house there, or a place of last and usual abode? These words "last and usual" (not "last or usual") refer to cases, where the party has had several residences within the commonwealth. To make the service good, the last residence, if it be the usual residence of the party, is the proper place at which the summons is to be left. If the party has no place of usual abode in the commonwealth at the time, the statute has not made the service at the place of his last abode sufficient. Both must concur. And there is sound reason in this provision; for otherwise it might happen, that if the party were at one time an inhabitant, and afterwards should change his domicil, and become a citizen of another state, or have his home and usual and constant place of abode abroad for any length of time whatsoever, his property might be attached here, and without any notice to him, or to any agent or attorney, a judgment might be obtained against him, binding the property attached for ever. So monstrous and mischievous a provision could hardly be deemed a just exercise of legislative power in any civilized country. The second clause applies wholly in terms to defendants, who have been at no time inhabitants or residents within the commonwealth. Now the writ itself negatives the presumption, that Swan is in this predicament. It describes him as now commorant at Paris, but of the city of Boston; so that his inhabitancy or residence at some time, in the commonwealth, is distinctly averred. The return of the marshal states, that such inhabitancy has not been within three years. So that the case before the court is of a defendant, who has once been an inhabitant, and for three years last past has ceased to be an inhabitant. No mode of service is provided for in such a case by the statute of 1797 (chapter 50); and the trustees having been discharged, it is not provided for by the act of 1794 (chapter 65). It is a casus omissus. In respect to the service of process in such a new and extraordinary manner, varying so much from the principles and practice of the common law, and in many instances so little consonant to the principles of public law, or general justice, there can be no ground to extend the statute provision by implication or equity. The state court itself has not so construed them; and in the cases of Tingley v. Bateman, 10 Mass. 344, Lawrence v. Smith, 5 Mass. 362, and Gardner v. Baker, 12 Mass. 36, has been disposed rather to narrow down than widen the means, by which non-residents are to be brought within the sphere of our process. It appears to me, therefore, that as the service of the summons on an agent is not authorized, except where the defendant has at no time been an inhabitant or resident, such service is void; and as no summons was in fact left at any place of abode of the defendant, either last or usual, in the commonwealth, there has been no compliance with the other branch of the statute. Either way, therefore, the service is, according to the local laws, defective and nugatory.

There is another defect in the description of the writ, which would be fatal, if every other were surmounted. Swan is not described to be a citizen of Massachusetts, or of any particular state, but only as "a citizen of the United States." Now, such a specific description is, according to the known course of decisions, indispensable to give the circuit courts jurisdiction. Although the judiciary act of 1789 has given to the circuit courts jurisdiction of causes, where "an alien is a party," yet this must be construed and controlled by the provisions of the constitution itself. The latter does not extend the judicial power of the United States to such an extent, but limits it to controversies between citizens of a state, and foreign citizens or subjects. Hence the uniform interpretation of the act of 1789 has been, that if an alien is one party, a citizen of some particular state must be the other party. The constitution does not recognize such a description of persons as "citizens of the United States," as the objects of its judicial power. The circuit courts have no jurisdiction of suits between aliens, or between persons having no other description than "citizens of the United States." A citizen of one of our territories is a citizen of the United States; but he is not by law entitled to sue or be sued in the circuit courts of the United States. This doctrine was settled at an early period in the circuit courts, as appears from the case of Irving v. Frazier [Case No. 7,075], Story, Pl. 9, and other cases cited in the note to Rea v. Hayden, 3 Mass. 24, 25, and has been affirmed in the supreme court in Hepburn v. Ellzey, 2 Cranch [6 U. S.] 445, and Montalet v. Murray, 4 Cranch [S U. S.] 46.

Upon the whole, in every view, which I have been able to take of the present case, it is the duty of the court to stay further proceedings, upon the ground, that there has been no sufficient service of the process to compel the appearance of Swan, or authorize a judgment of default against him.

[NOTE. Subsequently a bill in equity was filed against Swan and the other parties, trustees in the attachment proceedings. Swan, being out of the jurisdiction of the court, refused to appear and answer. The other defendants moved that on this account the bill be dismissed. Before granting the motion, the court allowed the plaintiff additional time. Case No.

11,135. After Swan's death a judgment at law was obtained against his administrator. Case unreported. Later a motion for a new trial was overruled. Id. 11,131.]