## MATAIUMU SIOFAGA, Appellant/Appellee

### v.

## FOLAU I'AULUALO, Appellee/Appellant

**Registration of the Matai Title "I'AULUALO" of the Village of Afono**

High Court of American Samoa
Appellate Division

AP No. 5-94
AP No. 6-94

December 13, 1995

Before RICHMOND, Associate Justice, ALARCON,[*] Acting Associate Justice, UNPINGCO,[**] Acting Associate Justice, and ATIULAGI, Associate Judge.

Counsel: For Folau Γauhualo, Tautai A.F. Fa`alevao
 For Mataiumu Siofaga, Gata E. Gurr

Opinion:

RICHMOND, J.:

## I. Introduction

Tipisone Manu Aoelua ("Tipisone") filed with the Territorial Registrar his claim to succession to the matai title Γauhualo of the Village of Afono. Appellee/appellant Folau Γauhualo ("Folau"), appellant/appellee Mataiumu Siofaga ("Mataiumu") and Naiuli L. Ma`ileoi ("Naiuli") filed objections to Tipisone's claim as counterclaimants to succession. Following the requisite hearings before the Secretary of Samoan Affairs, the Secretary certified an irreconcilable dispute to the court, in accordance with A.S.C.A. § 43.0302. The matter came for trial on December 29, 1993, before the Land and Titles Division ("trial court").

Prior to trial, Tipisone and Naiuli withdrew their respective claims to succession, leaving Mataiumu and Folau as the remaining candidates. On January 26, 1994, the trial court dismissed Folau's objection and counterclaim on the grounds that his petition lacked the requisite 25 supporting family signatures as required by A.S.C.A. § 1.0407. The trial court also dismissed Mataiumu's objection and counterclaim on the grounds that he was ineligible for matai succession under A.S.C.A. §

---

[*] Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

[**] Honorable John S. Unpingco, Chief Judge, United States District Court of Guam, serving by designation of the Secretary of the Interior.

1.0403. With no candidates remaining, the court remanded the matter of selection of a titleholder to the I'aulualo family.

Each party moved for a new trial or reconsideration pursuant to A.S.C.A. § 43.0802(a). The trial court denied both motions on March 17, 1994. Each party filed a timely appeal to this court. The appeals were consolidated, and we now issue our decision in the matter.

## II. Folau's Appeal

The trial court dismissed Folau's claim for failing to meet the requirements of A.S.C.A. § 1.0407, which provides in pertinent part:

> (b) A counterclaim or objection [to succession to a matai title] must be supported by a petition signed by no less than 25 persons related by blood to the title in question. The petitioners must be at least 18 years of age and residents of American Samoa at the time the petition is filed.
>
> . . . .
>
> (d) In the event the family does not have the number of members qualified as required to support the counterclaim or the objection, the counterclaimant or objector shall so state in a signed affidavit.

Folau testified that he was off-island when Tipisone offered the title for registration. By the time he returned, the 60-day statutory period for the filing of counterclaims or objections, *see* § 1.0407(a), had nearly expired. During the time remaining, he was able to garner only 10 signatures, instead of the required 25. Because he did not have enough signatures, he filed an affidavit, attempting to comply with the provisions of § 1.0407(d).

Section 1.0407 clearly requires a minimum of 25 qualified, supporting family signatures on an objection or counterclaim. We find absolutely no ambiguity or discretion in this requirement. The apparent reasoning behind this requisite is to ensure that a candidate has sufficient support from the family.

Section 1.0407(d) gives counterclaimants respite from the requirements of 1.0407(b) in only one circumstance: when "the family does not have the number of members qualified as required . . . ." A.S.C.A. § 1.0407(d). We agree with the trial court that this provision applies to families of fewer than 25 members. "Does not have" does not

130

mean "does not have remaining" or "can not be found" or some similar interpretation which Folau would have us place upon it. Thus, § 1.0407(d) only applies to a family with fewer than 25 qualified members.[1]

Folau's objection that such a rule precludes small minorities in a large family from blocking a candidate with more support seems to be precisely the point. If a candidate can not find 25 family members who support his claim as matai, the court cannot support it either. That is, if a claimant is only supported by 10 family members in his bid to be matai, the Fono (or Legislature of American Samoa) has deemed that we should not bestow the title upon that claimant. A candidate can not get around the 25 signature requirement simply by filing an affidavit under § 1.0407(d) claiming no one was left to sign his petition.[2]

Folau's reliance on *Asuega v. Manuma*, 4 A.S.R. 616 (Trial Div. 1965), is unavailing. In that case, the court dealt with a predecessor statute to § 1.0407, which read: "*Every* person claiming succession to a matai title shall file with the Clerk of the High Court a written claim . . . accompanied by . . . a petition signed by three-fourths of the members of the claimant's family . . . ." *Id.* at 620 (quoting Revised Code of American Samoa § 6.0104 (1961) (superseded by A.S.C.A. § 1.0405)) (emphasis in original). The court found it was mathematically impossible[3] for "two, much less 16, candidates [to] get three-fourths of the members of said family to sign his application." *Id.* at 622. The Fono changed the requirement to 25 signatures to avoid such mathematical futility. In *Asuega*, estimates of family size ranged from

---

[1] To the extent that *In re Matai Title "Fagaima"*, 4 A.S.R. 83 (Land & Titles Div. 1973), is inconsistent with this opinion, we overrule it. We do not express an opinion at this time, however, as to whether the word "family" in § 1.0407 refers only to a full extended family or may, under appropriate circumstances, refer to clans of an extended family or other different grouping.

[2] Additionally, Folau's affidavit seems to have been false. It does not appear that there were too few family members remaining to sign his petition, but rather that he did not have enough time to garner the signatures. Clearly, not having enough time does not satisfy § 1.0407(d).

[3] Nothing in § 1.0407 prohibits a qualified family member from signing more than one candidate's petition. Thus, it may have merely been mathematically improbable that more than one candidate could get three-fourths of the family members to sign a petition. No issue has been raised in this case as to whether a family member can sign more than one candidate's petition under § 1.0407.

131

300 to 5,000. *Id.* at 623. There is no mathematical problem with numerous candidates garnering 25 signatures of support in a family this size.

■ Folau's final argument has to do with the withdrawal of two of the four candidates for the title. Tipisone, the original claimant under A.S.C.A. § 1.0405, withdrew his petition for candidacy on the day of the trial, proclaiming his support for Naiuli. Naiuli also withdrew his candidacy on that day, throwing his support behind Folau. Folau now argues that the support, and thus the signatures, of those candidates should transfer to him. This argument lacks any foundation. Section 1.0407 has no provision for the transfer of signatures. The people who signed the petitions of the withdrawn candidates had given their support to those candidates, not Folau. If it is true that "[Folau]'s claim is substantially supported by more than 25 qualified members of his family," as he argues, *see* Appellant Folau's Br. at 11, he should have no problem being selected matai by the I'aulualo family when this matter is remanded.

■ In practice, § 1.0407 functions like a jurisdictional limit on the Land and Titles Division. If a candidate does not submit a petition with 25 signatures, the court simply cannot consider his claim. *Cf. In re Matai Title "Patea"*, 25 A.S.R.2d 139 (Land & Titles Div. 1994) (dismissing claims of two candidates whose petitions had 17 and 24 signatures each). Perhaps the Fono enacted such a provision in the spirit of the age-old adage "*de minimis non curat lex*" (the law does not concern itself with trifles). A person with fewer than 25 family members supporting his petition has a *de minimis* claim to the title.

In any account, the Fono has plainly set forth the requirements for filing a counterclaim in § 1.0407. It is not our function to rewrite the law but merely to interpret it. We have no question about the interpretation of § 1.0407. Thus, we affirm the trial court's dismissal of Folau's claim because his petition did not have the requisite number of signatures.

### III. Mataiumu's Appeal

### A. Construction of A.S.C.A. § 1.0403

Mataiumu was born in Faleasi'u, Western Samoa, in 1930. On this basis, unless excepted, he is ineligible to succeed to the I'aulualo title under A.S.C.A. § 1.0403(b). Section 1.0403 provides in relevant part:

A person not possessing all of the following qualifications is ineligible to succeed to a matai title:

132

. . . .

>(b) He must have been born on American soil; provided that a person born of parents who were inhabitants of American Samoa, but temporarily residing outside of American Samoa or engaged in foreign travel, at the date of birth of such child, may, for purposes of this subsection, be considered as having been born on American soil if:

>(1) while actually residing in American Samoa, and at any time within one year after he attains the age of 18 years, he files with the territorial registrar a renunciation, under oath, of allegiance to the country of his birth; or

>(2) he has resided in American Samoa for a continuous period of not less than 10 years prior to the time of filing his application to be registered as the holder of a matai title.

Mataiumu clearly does not meet the requirement of § 1.0403(b) that he be born on American soil. The trial court found that he also does not meet the exception to this requirement by being born of inhabitants of American Samoa who were temporarily residing outside of American Samoa or engaged in foreign travel.

Mataiumu's father was American Samoan, but his mother's village was in Faleasi`u, Western Samoa. His parents lived in Faleasi`u, and Mataiumu was born there. Mataiumu first travelled to American Samoa at age 27. He moved here permanently in 1966, at 36 years of age.

█ Mataiumu makes no claim to come under the exception set forth in § 1.0403(b)(1), but he has met the continuous, 10-year residency requirement of § 1.0403(b)(2). However, for Mataiumu to qualify under § 1.0403(b)(2), he still must show both that a parent was an "inhabitant[]"[4] of American Samoa, and that the parent's residence outside of the territory was temporary.

---

[4] A.S.C.A. § 1.0103 informs us that "the plural includes the singular" in interpreting provisions of the Code. Thus, presumably, Mataiumu need only have one parent who was an inhabitant of American Samoa temporarily residing elsewhere. We need not decide this issue, however, since Mataiumu fails to meet even this requirement.

■ Since the Code does not define "inhabitant," we must look elsewhere to determine the word's meaning. *Black's* defines "inhabitant" as "[o]ne who resides *actually and permanently* in a given place, and has his domicile there." BLACK'S LAW DICTIONARY 703 (5th ed. 1979) (citing *Ex Parte Shaw*, 145 U.S. 444 (1892)) (emphasis added). Based on the evidence presented to the trial court, Mataiumu's father was not an inhabitant of American Samoa under this definition. Residing outside of a place for more than 30 years cannot constitute "actually and permanently" living there.

Mataiumu's contention that his father is an inhabitant of American Samoa based on his status as a U.S. national is not persuasive. Numerous courts have found that the terms "inhabitant" and "citizen" are not synonymous. *See, e.g., Piquet v. Swan*, 19 F. Cas. 609, 613 (C.C. Mass. 1828); *Harris v. Harris*, 215 N.W. 661, 663 (Iowa 1927); *Opinion of the Justices to the House of Representatives*, 122 Mass. 594, 599 (Mass. 1877). We hold that "inhabitant" and "national" also are not synonymous. Furthermore, Mataiumu's father was a U.S. national, but § 1.0403 requires him to be an inhabitant of American Samoa. Being a U.S. national does not automatically make him an inhabitant of American Samoa any more than it makes him an inhabitant of Maine or Alaska. Thus, the fact that Mataiumu's father was a U.S. national, without more, does not make him an inhabitant of American Samoa within the terms of § 1.0403.

Mataiumu has also failed to convince us that his parents' residence outside the territory was "temporary." We agree with the trial court that "his parents were not just living [in Western Samoa] on a transitory, short-term basis *at the time of his birth*." Trial court's Order on Mots. to Dismiss at 5. At the time of Mataiumu's birth, it appears his parents had every intention of remaining in Western Samoa. Indeed, his father apparently did so until 1961, more than three decades. We need not put a precise time limit on what constitutes "temporarily residing outside American Samoa" to find that three decades is too long to qualify.

Thus, Mataiumu has failed to satisfy the requirements of the exception under § 1.0403(b)(2).[5]

---

[5] We agree with the concurring opinion in the trial court below that the Fono should reassess the purpose behind requiring a claimant to a matai title to be born on American soil or be born to inhabitants of American Samoa who are temporarily residing outside the territory. *See also In re Matai Title "Patea"*, 25 A.S.R.2d at 141 n.1. "The underlying policy appears to be assurance of a lasting, stable and knowledgeable relationship with American Samoa and Samoan customs and traditions." *Id.* Under the current rule, however, a person born in Hawaii and

## B. Conflict with Federal Law

Mataiumu has claimed that § 1.0403 conflicts with federal law. However, his brief is so poorly drafted that we have trouble ascertaining precisely what he is alleging. As near as we can tell, there are three potential claims: (1) that 8 U.S.C. § 1408 directly supersedes A.S.C.A. § 1.0403; (2) that Mataiumu, as a U.S. national, is entitled to candidacy as a matai; and (3) that § 1.0403 violates federal equal protection principles. We will briefly discuss each.

The first claim, that federal law supersedes § 1.0403, has no foundation. 8 U.S.C. § 1408 grants U.S. national status to various individuals. *See* 8 U.S.C.S. § 1408 (West 1987 & Supp. 1994). It does not explicitly supersede A.S.C.A. § 1.0403 or any other local law. There is no interpretive law to this effect. We fail to see how 8 U.S.C. § 1408 has any effect on § 1.0403 or any other provision of American Samoa's laws.

The second claim, that Mataiumu is entitled to seek a matai title because he is a U.S. national, also has no foundation. Mataiumu's status as a U.S. national no more entitles him to claim a matai title than it made his father an inhabitant of American Samoa. There is simply no connection between the two. We see no need to discuss this issue further.

Finally, Mataiumu appears to allege a violation of equal protection. If this is the case, he has failed to carry his burden. Mataiumu's argument goes no farther than citing *Craddick v. Territorial Registrar*, 1 A.S.R.2d 10, 12 (Appellate Div. 1980), for the proposition that the Fifth Amendment guarantee of equal protection applies in American Samoa. He does not tell us upon what basis he is alleging discrimination or what standard we are to apply in examining whether the discrimination survives constitutional scrutiny.[6]

---

residing there the majority of his life could validly claim a title, while a person born in Western Samoa who moved here at a young age might have no claim. The law could be redrafted to fit its purpose much more closely.

[6] The trial court measured Mataiumu's claim of equal protection violation under a rational basis standard. *See* trial court's Order on Mots. for New Trial at 5. Without explicitly endorsing that standard of review, we note that Mataiumu has not argued that any more stringent standard should apply. We agree with the trial court that § 1.0403 is rationally related to a legitimate purpose, and thus satisfies the rational basis test.

Folau also has made no arguments concerning these important questions. Thus, we have virtually no briefing on an issue we are not even sure Mataiumu meant to raise. We find that Mataiumu, as appellant on this issue, has failed to carry his burden.

## C. Privileges and Immunities

Mataiumu next claims that § 1.0403(b) abridges his privileges and immunities. He does not tell us whence his right to be free from such an abridgement arises. We assume it must be from the Privileges and Immunities Clause of the Revised Constitution of American Samoa, Rev. Const. Am. Sam. art. I, § 16, since the Privileges and Immunities Clause of the United States Constitution, U.S. Const. art. IV, § 2, has no application here. *See Banks v. American Samoa Gov't.*, 4 A.S.R.2d 113, 128 n.7 (Trial Div. 1987). Even if this assumption is correct, however, Mataiumu gives us insufficient guidance as to how we should apply the clause to his case.

The Privileges and Immunities Clause of the Revised Constitution of American Samoa, reads: "No law shall be made or enforced which shall abridge the privileges and immunities of the citizens of American Samoa." Rev. Const. Am. Sam. art. I, § 16. This clause cannot be taken literally, since nearly every law passed by the Fono abridges some privilege or immunity[7] of the American Samoan population. The question, then, is what the clause is supposed to mean.

We cannot look to the United States Constitution for guidance, since that clause offers us no parallel here. Although the language of the clauses is similar, the Privileges and Immunities Clause of the United States Constitution was particularly enacted to restrain states from extending privileges and immunities to its own citizens which it did not extend to citizens of other states. *See* 16A AM. JUR. 2D *Constitutional Law* § 713 *et seq.* (1979). The intent was to protect citizens in the new union of states from discrimination as they traveled from jurisdiction to jurisdiction. *Id.*

We have nothing paralleling the federal system in American Samoa. All of American Samoa falls under a single legislature, which passes laws for the entirety. Thus, we have no need for a law protecting citizens from disparate treatment as they travel from jurisdiction to jurisdiction.

---

[7] The words "privilege" and "immunity" have been taken to be nearly synonymous. 16A AM. JUR. 2D *Constitutional Law* § 724 (1979) (citing *Connor v. Elliott*, 59 U.S. 591 (1856)). A "privilege" is a peculiar advantage, exemption, or immunity; while an "immunity" is an exemption or privilege. *Id.*

Furthermore, we are unsure who comprises a "citizen[] of American Samoa." There is no provision in the Constitution or the laws of American Samoa defining the term "citizen." Indeed, it has been stated that "[t]here is no separate citizenship of a territory, and the only citizenship its inhabitants and residents have, or which Congress can confer on them, is national as citizens of the United States." *Id.* at § 719. The terms "citizen" and "resident" are essentially interchangeable in *most* cases brought under the Privileges and Immunities Clause of the Federal Constitution. *United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208 (1984) (emphasis added). However, states and territories can both discriminate against nonresidents, if the discrimination is truly based upon residency and not citizenship. *See Haavik v. Alaska Packers Ass'n.*, 263 U.S. 510 (1924); *Maxwell v. Bugbee*, 250 U.S. 525 (1919); *La Tourette v. McMaster*, 248 U.S. 465 (1919).

Thus, we are faced with an important question: To whom does the Privileges and Immunities Clause apply? The section of the American Samoa Code dealing with citizenship has been explicitly reserved. *See* A.S.C.A. § 41.01. Do we apply the clause to "American Samoan[s]" as defined by the Code? *See* A.S.C.A. § 41.0202. Do we apply it to "[p]ermanent resident[s]"? *See id.* Maybe it should apply to "[n]ational[s] of the United States." *See id.* We have received absolutely no guidance on the issue from counsel.

Even if we determine to whom the clause applies, counsel has not informed us how it should be applied. We are not convinced that the clause is meant to eliminate discrimination against nonresidents or non-citizens, since it does not even mention these people. Mataiumu seems to argue that the Privileges and Immunities Clause is actually a guarantee of equal protection. *See* Appellant Mataiumu's Br. at 10-14. He gives us absolutely no guidance, however, on how we should make the intellectual or legal leap from the concept of privileges and immunities to that of equal protection. While this approach might be tempting in a jurisdiction with no constitutional equal protection provision, we simply will not make such an interpretation given no supporting authority or policy arguments from counsel.

Thus, as with the equal protection claim above, we are forced to dismiss Mataiumu's privileges and immunities claim because he has not carried his burden of proving the issue.

## IV. Conclusion

Thus, neither Folau nor Mataiumu has convinced us that the trial court erred. The judgment of the lower court is affirmed, and the matter of

selection of a titleholder to the matai title I'aulualo of the village of Afono is remanded to the I'aulualo family.

It is so ordered.