FLORENCE M. GIBBS, Respondent, *v.* THE QUEEN INSURANCE COMPANY, Appellant.

An action may be commenced under section 427 of the Code, by a citizen of this State against a foreign fire insurance company, in either of the courts designated in that section, by the service of a summons in the form prescribed by the Code, as in other civil actions.

No other process is required either for the commencement or the maintenance of the action.

*It seems,* that the action so commenced and the judgment therein should be general in character, not directed against any particular property.

The authorities upon the subject of the bringing of actions against absent non-residents by process not personally served, and as to the effect of judgments therein, collated and discussed.

Where a foreign fire insurance company has designated an agent, in compliance with the provisions of the State insurance laws (§ 23, chap. 466, Laws of 1853; as amended by § 5, chap. 367, Laws of 1862; see also § 1, chap. 279, Laws of 1855), making the appointment of an attorney or agent in this State upon whom process in suits against the company may be served a prerequisite to its doing business in the State, it thereby submits itself to the jurisdiction of the State courts having authority to act; and by service of a summons on an agent so designated, the court acquires jurisdiction, and may render a judgment valid and capable of being enforced upon any property of defendant within the jurisdiction.

*McCormick* v. *P. O. R. R. Co.* (49 N. Y., 303); *People* v. *C. R. R. of N. J.* (42 id., 283); *Schwinger* v. *Hickok* (53 id., 280); *Hulbert* v. *H. M. Ins. Co.* (4 How. Pr., 275) distinguished.

(Argued October 4, 1875; decided November 9, 1875.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, affirming an order of Special Term denying a motion on the part of defendant to have the service of summons herein set aside and the action dismissed.

Defendant is a foreign insurance company incorporated under the laws of Great Britain. It had designated an agent in this State upon whom process in suits against it could be served, as required by the insurance laws of the State, as a prerequisite to its doing business here. Plaintiff is a resident

of the State, and the action was upon a policy of insurance issued in the State upon property therein. The summons was for relief, and in the usual form as prescribed by the Code, and was served upon the agent so designated. The motion was made upon the ground that defendant being a foreign corporation, the court had no jurisdiction of its person, and that as no attachment had been issued, the court had no jurisdiction of defendant's property.

*Edward C. James* for the appellant. A defendant may appear specially in an action for the purpose of testing the question of jurisdiction, and by so doing does not confer jurisdiction generally in the case. (*Allen* v. *Malcomb*, 12 Abb. [N. S.], 335; *Sullivan* v. *Frazee*, 4 Robt., 616; *Seymour* v. *Judd*, 2 N. Y., 464; *O. and L. C. R. R.* v. *V. and C. R. R.*, 6 S. C. R., 488, note; *McCormick* v. *P. C. R. R. Co.*, 49 N. Y., 303.) The service of a summons gives the court no jurisdiction of the person of a foreign corporation; it can only be obtained by the voluntary appearance and consent of the corporation. (*McCormick* v. *P. C. R. R. Co.*, 49 N. Y., 303; *Hulbert* v. *Hope Mut. Ins. Co.*, 4 How., 275, 415; *Brewster* v. *M. C. R. R. Co.*, 5 How., 183; *Dart* v. *Farmers' Bk.*, 27 Barb., 337; *People* v. *Cent. R. R. of N. J.*, 42 N. Y., 289; *Doty* v. *N. T. Co. of Ohio*, 3d Dept., March, 1872; *O. and L. C. R. R.* v. *V. and C. R. R.*, 6 S. C. R., 488, note; *Merrick* v. *Van Santvord*, 34 N. Y., 208, 218, 220, 221.) The fact that a foreign insurance company appoints an agent in this State and does business here, does not affect its domicile or its right to be regarded as a citizen of another State. (*Stevens* v. *Phœnix Ins. Co.*, 41 N. Y., 149, 154; *Kransher* v. *N. H. Stbt. Co.*, 7 Robt., 356; *Schwinger* v. *Hickok*, 53 N. Y., 280.) The motion to set aside the service of summons and dismiss the case for want of jurisdiction of the person of defendant should have been granted. (*Hulbert* v. *Hope Mut. Ins. Co.*, 4 How., 275, 415; *Brewster* v. *M. C. R. R. Co.*, 5 id., 183; *Whitehead* v. *B. and L. H. R. R. Co.*, 18 id., 218, 232; *Bates* v. *N. O., J.*

*and G. N. R. R. Co.*, 13 id., 516, 519, 520; *Howell* v. *C. and N. W. R. R. Co.*, 51 Barb., 378; *Walbridge* v. *F. F. Ins. Co. of Phila.*, St. L. Special Term, Sept., 1874.) The appointment by a foreign corporation of an agent or attorney on whom process of law may be served does not affect the right of the corporation to be regarded as a citizen of another State. (*Stevens* v. *Phœnix Ins. Co.*, 41 N. Y., 149, 154; *Kransher* v. *N. H. Stbt. Co.*, 7 Robt., 356; *Bates* v. *N. O., J. and G. N. R. R. Co.*, 13 How., 516; *Schwinger* v. *Hickok*, 53 N. Y., 280.)

*J. A. Hathway* for the respondent. The service of the summons gave the court jurisdiction of defendant even under the Code. (24 S., 457, 157; Laws 1848, chap. 379, p. 497; Laws 1849, chap. 107, p. 142; id., chap. 438, p. 613; *Whitehead* v. *B. and L. H. R. Co.*, 18 How., 218; *McDonough* v. *Phelps*, 15 How., 376; *Cumberland Coal Co.* v. *Hoffman Coal Co.*, 30 Barb., 159; 4 How., 275; 5 id., 183; 13 id., 415; 10 id., 1; 7 id., 238; 43 id., 489.)

FOLGER, J. The questions arising in this case are two: 1. Has the legislature provided a mode in which a citizen of this State, having a cause of action against an insurance company, created by the laws of another country, may bring an action against that company in some of the courts of record of this State? And this question involves the inquiry, as to what is the process by which the action may be commenced, and in what manner shall service of it be made. 2. Does the method provided, and the process and mode of service of it prescribed, give some of the courts of record of this State such jurisdiction of the matter and of the defendant, as that they can render a personal judgment which will be valid in this State, and enforceable against any property of the defendant found within it?

It may be conceded that, before the Revised Statutes, a foreign corporation could not be sued at law *in invitum*, in our courts. In *McQueen* v. *Middletown Mfg. Co.* (16 J. R., 5),

it was held that the provisions of the absent debtor act did not apply to the case of a foreign corporation; and the reasoning of the opinion in that case makes it quite plain, that in no other way could such a corporation be brought compulsorily into our courts of law. So the revisers felt the force of the decision in that case, and they declared that the fair protection of our own citizens required, that some provision should be made to render such corporations amenable to our laws in our courts; (5 Edmonds' ed. Stats., 742). The sections of the Revised Statutes which were adopted upon their report, were drawn in analogy with the provisions of statute law against absent debtors (Id.). They required that suits in the Supreme Court, against a foreign corporation, should be commenced by attachment; (2 R. S., p. 340, §§ 15–30). The phrase is, "may be commenced by attachment." This, though permissive in form, was, in effect, a requirement. In 1840 (Laws of 1840, chap. 354, p. 296), there was an amendment of the provisions of the Revised Statutes, but in no particular material to the present inquiry. In 1842 (Laws of 1842, chap. 197, § 5, p. 228), there was provision made, for the publication of a notice that an attachment had issued.

I am not aware of any other statutory alteration of those provisions, before the enactment by the legislature of the Code of Procedure. That enactment, at its first adoption in 1848, was silent upon the subject of actions against foreign corporations, so far as any special mention of the manner of commencing an action; (Laws of 1848, chap. 379, p. 497). The code commissioners meant to provide one process only, for the commencement of civil actions. They say: "At present, as is well known, there are three modes of commencing a suit at law: by a *capias* against natural persons; a summons against corporations, and a declaration against either. In equity the suit is commenced by bill and subpœna. We have substituted a summons and complaint in all cases, the service of the summons to be deemed the commencement of the suit;" (First Report of Commrs., p. 131). After providing for the provisional remedies of arrest, injunction

and claim and delivery of personal property, they say :. "There are several other provisional remedies, which we shall define and provide for in the completed Code;" (Id.,. 176). It was undoubtedly on account of these other provisional remedies not being then provided for, that there was placed in the Code of 1848, a section by which there was retained, as part of the system of practice thereby created, certain portions of the Revised Statutes, and among them, article 1, title 4, chapter 8, part 3 thereof, in which are found the provisions for suits against foreign corporations; (See § 389 of Commrs. Report, § 390 of Code of 1848). That the retaining of these provisions was meant to be but temporary, is evident from the language given above from the first report of the commissioners, and from the introductory words of this saving section, viz., "Until the legislature shall otherwise provide, this act shall not affect    *    *    *    any proceedings provided for, etc." It is apparent that it was. neither the intention of the commissioners nor of the Legislature, to permanently incorporate into the new system those parts of the old which were saved by this section.

In 1849 the attention of the legislature, was drawn to the matter of the extension of the remedies at law against foreign. insurance companies, and an act was passed with a title to that effect, though the body of the act professedly amended the section of the Revised Statutes which provides for suits against foreign corporations; (Laws of 1849, p. 142, chap. 107). It provided that suits might be brought in the Supreme Court, in the Superior Court and Common Pleas of New York city, against any foreign corporation, upon any cause of action arising therein, by complaint and summons, with an attachment as then provided by law; the summons and complaint to be served as provided by sections 113 and 114 of the Code of Procedure. This act did not render inoperative the introductory words of section 390, above cited, for the legislature did not thereby so far otherwise provide, than was already provided in the Revised Statutes, as to annul all the provisions contained in them as to foreign cor-

porations. The act retained the attachment of the Revised Statutes, as a conjoint process by which to commence a suit, to be served with the summons and complaint, and to be levied as in them prescribed. But it added a summons and complaint, as necessary process together with the attachment to commence a suit, and they were to be served as provided in the Code of 1848, in sections 113 and 114. Those sections provided for service by delivery of a copy, if the suit be against a corporation, to the president or other head of it, secretary, cashier or managing agent (§ 113); and where the person to be served could not be found within the State, and had property therein, the service might be by publication of the summons (§ 114).

It is contended by the appellants that in this act (chap. 107 of Laws of 1849) is the origin of a summons against a foreign corporation, and that it is a process different from the summons of the Code. This contention may be correct, so far as in this act is the first permission to sue a foreign corporation by summons and complaint, together with an attachment; but there is no solid basis for the contention that the summons there named is not the summons of the Code. Undoubtedly the name summons, was in the ancient practice given to a process of the higher courts; (2 Sellon's Pr., 477, 536, 644; 20 Viner Ab., 42; Kerr on Action at Law, *145). And a summons was the appropriate process for the commencement of an action against a domestic corporation; (*Lynch* v. *Mech. Bk.*, 13 J. R., 127; and see 2 R. S., p. 458, § 5). But the Code brought in, in modern times, the appellations summons and complaint, for the process by which to commence actions in courts of record, in the place of the names *capias*, narr., subpœna and bill, of the former practice. (See 1st Report of Commrs. above cited.) And this act (chap. 107, Laws of 1849), when it speaks of a summons and complaint together, does it without description of them, or prescribing the form or substance, as of legal papers already provided for in the law. They had just been provided for in the law, in the Code. The Revised Statutes, though

they provide for a summons against domestic corporations, enact that the initiatory pleading of the plaintiff shall be a declaration ; (2 R. S., 458, § 7). And the reference in the act of 1849, to sections 113 and 114 of the Code, show that the provisions of the latter were in the mind of the draftsman.

Later in the year 1849, when the second report of the Commissioners of the Code came to be considered, the Legislature took up the subject of the enforcement of rights against foreign corporations, and, in its amendments to the Code, made provisions therefor ; (Laws of 1849, chap. 438, p. 613, passed April 11th, 1849). By the new section 427, it authorized an action against a corporation created by the laws of any other country, to be brought in the same courts named in chapter 107, above cited, by a resident of this State, for any cause of action ; by a non-resident, only for a cause of action arising in this State, or having the subject of it here. This was in some respects absolutely inconsistent with the act (chap. 107) of 1849, and so far repealed it by implication. It is plain that the legislature, in authorizing an action by this section, meant the one form of action for the enforcement of private rights, which it at the same time provided for and denominated a civil action ; (Code, § 69). And, inasmuch as by section 127 that action could be commenced alone by the service of a summons, and the form of that summons (§§ 128, 129), and the mode of that service, were prescribed (§§ 113, 114 of 1848), it at the same time, with the authority for bringing the action by that summons, gave, for the first time, the power to serve it on a foreign corporation, either by the delivery of a copy to a certain officer of it or by publication ; (§§ 134, 135 of 1849). It also, in that year, for the first time, provided for an attachment, under the Code, upon property of a foreign corporation, as a security for the satisfaction of the judgment. It may well be queried, whether, when these amendments to the Code of 1848, became the law in 1849, they did not provide a complete and single method for the bringing of an action against a foreign corporation, and

whether, then, the words of saving in section 390, of 1848, had not had their full operation, for the reason that the legislature had now otherwise provided a full and operative mode of suing, in this State, a corporation created in another State or country. If so, there could be no resort afterward to the method of the Revised Statutes ; and not only the process of the Code — the summons of the Code — was what was required to be used, but the only process that was authorized to be used, and it was to be served, and served only, as required by the Code, and, when served as required by the Code, was, in the legislative intention as expressed in the Code, effectual for the commencement of an action against a foreign corporation in the designated courts of this State. It is true that since 1848 the legislature has several times amended section 471, and, in doing so, has employed again, in each instance, the language of the clause which saves certain parts of the Revised Statutes. There is not to be found in this an intention to re-enact the saving of those parts, so that the saving clause should be revived, and date again from the time of the enactment of each amendment. The object was to enact the amendatory matter which was added in each instance. The whole section was preserved, not to re-enact the whole, but to keep up a harmonious text in the Code, and it is in each case the amendment only which is the new statute. (See *Ely* v. *Holton*, 15 N. Y., 595 ; *Hartung* v. *The People*, 26 id., 167–172.) It may be said that still there is no indication of a legislative intention that this summons should be served unless an attachment is also levied upon property of the corporation. The one hundred and thirty-fourth section, as adopted in 1849, makes no limit of that kind upon the service by publication, though it was required by the corresponding section of 1848 that the absent defendant should have property in this State, or should be a resident thereof. It is not needed that stress be laid upon this difference. In 1851 sections 134 and 135 were amended, and the mode of service of summons upon a foreign corporation was brought distinctly into notice. It was declared that there might be

service by delivery of a copy to any one of certain officers of it, but only when it had property in the State, or the cause of action arose therein (§ 134); and that there might be service by publication only in one of the same cases (§ 135). These sections have since been amended, but with no narrower limitation. By putting these alternative cases, it is shown that the legislature did not mean to insist on the existence of property of the foreign corporation in this State, as always a necessary prerequisite for such a service of summons upon it, as should be the commencement of an action against it. The language of these sections is to this effect: Before you begin your action against a foreign corporation by the service of a summons upon it by delivery of a copy or by publication, either there must be property of it in this State, or the cause of action must have arisen therein; one or the other, and either will suffice. If the legislature did not intend to make the existence of property in this State a controlling element in the right to commence an action, then it did not mean to make an attachment against property a process necessary thereto; for the plain reason that it would be futile to issue an attachment to be levied upon property when none could be found; and delusive to allow the service of summons in a case where no property is found in the State, if still there must be, for the effectual bringing of an action, an attachment issued and levied upon property here.

I have already stated that the action against a foreign corporation is the civil action of the Code, and that that action is, in all cases, commenced only by the service of a summons. So, also, there is a mutual dependence of all the sections of the Code which speak of the summons and of its service; (§§ 127–135, inclusive). It is the summons, that definite process by which a civil action can alone be commenced, which is to be drawn up in a particular form, to be served by certain persons, and in an especial manner. As the service is to be thus especially made on a foreign corporation, it must be that definite process which is to be served upon it, and which is to be the means of the commencement of an action against it.

Again, the legislature in 1866 amended the two hundred and twenty-seventh section, so as to confine the cases in which an order of attachment could issue to those for the recovery of money only, and for the wrongful conversion of personal property. It is claimed that an action like this against a foreign insurance company, on a policy against loss or damage by fire, is for unliquidated damages, and does not fall within either of those cases, and hence that no attachment can issue in this action under the Code; and *Tuttle* v. *Smith* (14 How., 395); *Cobb* v. *Dunkin* (19 id., 164), are cited. If this be so, and if it be that the provisions of the Revised Statutes are abrogated by the Code, and if it be that without an attachment against property no such action can be maintained, the legislature has left the citizens of this State without remedy in the courts of this State upon such cause of action. It is difficult to conceive that there could have been that intention; and rather than to hold that there should have been such oversight, the courts will look for an intention to permit the commencement of an action without an attachment. Nor does the Code make any distinction in respect to the manner and effect of entering judgment against corporations and others. (§§ 274–282.)

And there is other legislation yet more expressive. In 1853 (Laws of 1853, p. 915, § 23) it was enacted that every foreign fire insurance company desirous of doing business in this State should appoint an attorney in this State on whom process of law could be served, which appointment should continue until another was substituted. In 1855 (Laws of 1855, chap. 279, p. 470) an act was passed to facilitate the service of process on insurance and other corporations doing business in this State. It required them to designate some person residing in each county where the corporation transacted business, upon whom process issued under the laws and authority of this State might be served, and declared that it should be lawful to serve on such person any process so issued; and service so made should be valid service. In the lack of such designation, process might be served on any person who

should be found in the State acting as agent or doing business for the corporation; and service made in pursuance of the act should be deemed a full compliance with any statute requiring personal or other service. The act likewise defined the word process used by it, to include any summons, writ or order, whereby any action, suit or proceeding should be commenced. In 1862 (Laws of 1862, chap. 367, p. 65) the provisions of the act of 1853 were re-enacted. And it may be mentioned for reference hereinafter, that by this last act, each foreign fire insurance company, was required to deposit securities with the superintendent of the insurance department of this State, for the benefit and security of policyholders.

I cannot but think, from this review of the legislation upon this subject, that the last intention and purpose of the legislature, was to authorize the commencement of an action by a citizen of this State, in certain courts of this State, against a foreign fire insurance company by the service of a summons, or a summons and complaint, without requiring other process then or afterward to be issued for the commencement or maintaining thereof; that the action so commenced should be one general in character, not directed against particular property, and the judgment therein should be one capable of being collected from any property of defendants in the jurisdiction.

And now the second question in the case is presented. I am aware that, in an international point of view, jurisdiction to be rightfully exercised, must be founded either upon the person being within the territory, or upon the thing being within the territory (Story on Conflict of Laws, § 539), and that the laws of a sovereign extend over persons who are domiciled within his territory, and over property which is there situate (id.), and that no sovereignty can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions; and that every exertion of authority of that sort beyond those limits is a mere nullity, and incapable of binding such persons or property in any other tribunals; (*Picquet* v. *Swan*, 5 Mason, 35).

Based upon this doctrine there have been repeated decisions in this State, which coincide with decisions in other States and England, that the courts of one State or country will not enforce the judgment of a court of another State or country, rendered *in personam* against a defendant who was not served with process within its territorial jurisdiction, and who did not appear in the action, nor in any manner submit himself to the jurisdiction; (*Shumway* v. *Sullivan*, 6 Wend., 447, and cases there cited; *Ferguson* v. *Mahon*, 11 Ad. & Ell., 179; *Smith* v. *Nicolls*, 5 Bing. N. C., 208). It has been laid down as a principle of natural justice, that no one shall be bound by a judgment who has not been served with process, and that a custom not to summon or to give notice to the defendant, was contrary to the first principles of justice and could not be good; (*Fisher* v. *Lane*, 3 Wils., 297; but see S. C., 2 W. Blk., 834, and comment in 4 Bing., *infra*). And so it has been held, that even in the jurisdiction in which the judgment has been rendered, it will be reversed on writ of error brought by a defendant who was not served with process, nor whose property was not attached, who was not an inhabitant of the State, and did not voluntarily appear; (*Bodurtha* v. *Goodrich*, 3 Gray, 508). It is certain, however, that this doctrine has not been always adhered to in the full extent in which it is expressed, for many municipal codes do provide for the bringing of actions against non-resident absent citizens and non-resident absent foreigners, by process not personally served either within or without the jurisdiction, though as to such actions it is held, in some cases, that the effect of such proceedings is purely local, and elsewhere a nullity; (*Cavan* v. *Stewart*, 1 Starkie N. P. R., 200, per Ld. Ellenborough; *Ferguson* v. *Mahon*, *supra*; *Smith* v. *Nicolls*, *supra*). But though a nullity elsewhere, may they not be, under certain circumstances, of validity in the territory where entertained? The judgments rendered in them have sometimes been respected in other jurisdictions, and intimation has been given that they might be good against the property of the defendant in the territory

where rendered. In *Burrows* v. *Jemino* (2 Strange, 733) a determination according to the local laws at Leghorn, though affecting adversely one not having part in the proceedings, was held conclusive. The reasons for the decision are not stated at any length. In *Douglas* v. *Forrest* (4 Bing., 686) decrees were pronounced in Scotland against a native thereof who went out of the jurisdiction before commencement of action and never returned, and had no notice of the proceedings. The decrees ordered him to pay certain sums of money. He had been summoned by posting, according to the law of Scotland. The Court of Common Pleas of England held these decrees consistent with the principles of justice. The ruling, however, was (in terms) confined to a case where the party owed allegiance to the sovereignty which gave the judgment, from being born under it, and from his property being at the time protected by the laws of it. (See also *Martin* v. *Nicolls*, 3 Simons,* 458.) In *Becquet* v. *Mac-Carthy* (2 Barn. & Ad., 951) a judgment *in personam* got in a British colony against an absent party without notice to him, but by the service according to local law upon the king's attorney-general of the colony, was held not so contrary to natural justice as to be void. But the defendant there had been a resident of the colony in an official capacity. That case, it has been said, has been supposed to go to the very verge of the law; (*Donn* v. *Lippman*, 5 Cl. & Fin., 1; *Smith* v. *Nicolls, supra*). A plea of a judgment of the Admiralty Court of Sierra Leone for same cause of action, got against the defendant therein when he was out of the jurisdiction at the time of the commencement of the suit and ever after until its termination, and had no knowledge of the proceedings, was held ill. It is mentioned in the decision, as if of some significance, that the defendant had no agent or other person within the jurisdiction upon whom process of the court could be served. And that this fact is of consequence appears from *Hope* v. *Hope* (4 De Gex, McN. & G.,* 328). In that case the principle is set forth, on which a substituted service is ordered when the defendant is abroad.

The question is there stated to be, whether there is any person within the jurisdiction who may be fitly served, and service upon whom may be treated as equivalent to service upon the absent person himself. The case of an agent, managing all the affairs of a defendant who is abroad, and regularly communicating with him thereon, is put as one in which substituted service will be permitted, or where he has an agent in the territory specially managing the particular matter involved. In such cases the service has been deemed good, as the inference is irresistible that the agent is impliedly authorized to accept that particular service, or will communicate the process to his principal. The object of all service is said to be, to give notice to the party on whom it is made, that he may be aware of and may resist what is sought of him, and when that is substantially done, so that the court may feel confident that service has reached him, every thing has been done that is required. In *Hobhouse* v. *Courtney* (12 Simons,* 140; Eng. Chy. Rep., 35 vol., p. 119), it is held that where a non-resident defendant has created an attorney in fact to deal with the particular matter afterward in suit, a service on such attorney will be good service upon the principal.

These cases were in chancery, and the orders made in them were authorized by act of Parliament, though it is said in *Hope* v. *Hope* that the authority of the court in that respect had not been extended by the statute. (See Kerr on Actions at Law, chap. 4, p. *175.) It may be that our Supreme Court has not the authority to direct such substituted service in this case. It need not have; the act of the legislature allows it, and is a higher source for the power so to serve and to sue.

Of course these cases are not cited here, as going further than that the service thus made, gives jurisdiction of the defendant for the purposes of the action thus commenced, so as to enable a judgment, valid within the territorial limits to which the court is confined, to be enforced therein against any property found there. And it seems to be conceded in

*Thompson* v. *Emmert* (4 Mc Lean, 96), that a judgment com-
menced by attachment and rendered without notice to the
defendant, may be enforced upon all of his property within
the State, and that it may be within the power of the State
to subject all the property of the defendant within it, to the
payment of his debts in the mode which the law making
power may deem just. (And see *Picquet* v. *Swan, supra,*
p. 43.) The sovereign has the right to make laws to bind
foreigners in relation to their property within his domains;
in relation to contracts and acts done therein, and in relation
to judicial proceedings, if they implead before his tribunals.
(Story on Confl. Laws, § 541.) Whether such a judgment
would be recognized in another country is not now under
consideration.

And now I am prepared to ask, would it not be sufficient
to confer jurisdiction upon the Supreme Court over this
defendant, in this case, that the defendant had filed, in
some proper place in the jurisdiction, an appointment of
an agent, specifying that he was authorized to receive for
it the very process issued in this case, and that thereby
a suit therein might be commenced against it, and that
the Supreme Court had ordered such service to be made,
and that such service had been made in accordance there-
with? Is it not much more effectual to that end, when
the legislature of the State has enacted that the defendant,
as a prerequisite to doing business in this State, shall des-
ignate an attorney or an agent therein upon whom process
in any suit to be commenced against it may be served,
and that it has designated a person as such agent, and that
service of process against the defendant has been made upon
him? Is not the enactment of the statute by the legisla-
ture, a proffer to the defendant of the power to do business
in this State, if it will subject itself to the jurisdiction of our
courts, and is not the acceptance of that proffer by the
defendant a submission to that jurisdiction? If the defendant
had authorized an attorney to appear for it on the record, in
the Supreme Court, in this case, it would have been a volun-

tary appearance and a submission to jurisdiction, and the court would have obtained jurisdiction of the person and could have rendered a judgment *in personam*. How does it differ in principle that in anticipation of any and all suits which may be brought against it, it nominates a person upon whom service of process against it shall be as effectual as service of the same process upon it? In my judgment the existence of an agent made in that way, for that purpose, and upon such inducement and after such statutory agreement, meets the whole principle upon which rests a substituted service as set forth in the cases above cited. The agent is created to manage the matter for it of the reception and transmission of process in suits to be commenced against it, thus making him, in an especial manner, a proper person for a substituted service, as being appointed especially therefor, by the absent party. Indeed, when to avail itself of the conditional privilege of doing business in this State held out to it by statute (see Laws of 1862, *ut supra*), the defendant brings its property here and deposits it with an officer of this State, thus subjecting it to the adverse operation and committing it to the protecting care of the laws of this sovereignty, and designates a person to stand in its place for the lawful and valid personal service of process upon it, why does it not take on a *quasi* allegiance to this sovereignty, which makes it so subject to the laws thereof as that the courts acting in pursuance of enactments to that end may, and do, acquire a jurisdiction over it, coextensive with the territory in which they act, which is so much a jurisdiction of the person as makes here a valid judgment capable of enforcement upon any property of the defendant to be found within this State? Consider further that it is a corporation, which can act only by a natural person as its agent or officer. A foreign corporation can come into this State with its property, establish its business and make and enforce its contracts here only by a natural person. Is it not, in such case, within the State in *propria persona* for the purpose of the jurisdiction of the courts of the State, and for

the purpose of a judgment valid within the territorial limits of the State, if the legislature of the State choose so to enact? Can it be said to be contrary to the principles of natural justice, that a body which can make a contract only by an agent, shall be bound to take notice by process served upon the same, or a like agent, that it is called into the courts of the State to answer for the non-performance of that contract? I think that such is the result of all the legislation upon this subject, which has been herein passed in review, and that as a consequence the summons in this action was well issued and well served, and is the legal commencement of an action against the defendant.

There are cases in this court which are supposed to imply a different doctrine. *McCormick* v. *The Penn. C. R. R. Co.* (49 N. Y., 303) is one. There is no conflict. The plaintiff there was a non-resident and the subject of his cause of action was not situate within this State, nor did the cause of action arise here, so that he could not have commenced an action at all against the defendant *in invitum.* (Code, § 471.) The subject-matter of the action was, however, of a nature that our Supreme Court had jurisdiction of it, and when the parties came voluntarily before it for an adjudication it had jurisdiction of the persons. Again, the defendant in that case was a foreign corporation, but it did not appear that it was doing business in this State so as to have appointed an agent on whom service of process could be made in its stead; so the decision in that case dealt only with the question involved in the facts presented, and its silence upon others may imply no more than that it was not necessary nor discreet to go abroad from the precise matter, and upon which, without any thing else, the case could be satisfactorily disposed of. There was a voluntary general appearance and submission to jurisdiction, and it was needful only to state the effect of that on the objection of the want of jurisdiction. It was the same with *The People* v. *Central Railroad of N. J.* (42 N. Y., 283), so far as the question of jurisdiction of the person was there con-

cerned. In *Schwinger* v. *Hickok* (53 id., 280), it was held that a personal judgment for a deficiency arising upon a mortgage foreclosure sale could not be rendered against a non-resident who was not served with process in this State, and who had not voluntarily appeared. There was not found there any legislative provision for a substituted service. The opinion seems to concede, that the legislature could have declared that a judgment got against a non-resident, upon service by publication even, might be enforced against all property of the defendant within the State, though it would be *in rem*, and could impose no personal liability. *Hulbert* v. *Hope Mut. Ins. Co.* (4 How. Pr., 275) furnishes an able opinion of a learned judge (SILL, J.), and is much relied on by the defendants. That was decided early in 1850, before the amendments to the Code permitting the service of summons on a foreign corporation, when it has no property in this State, and before the legislation of 1853, 1855 and 1862. These amendments and this legislation are so important in the disposition of the questions in this case, that I think nothing more need be said to show that the case in 4 Howard (*supra*) should not hinder the result I have reached. Many other cases are cited by the defendants. It will not be profitable to discuss them in detail. The reasons for the decision of this court in this case have been given, and the intelligent practitioner can see wherein I differ from the learned and respected judges who have given variant decisions.*

The order appealed from should be affirmed.

All concur.

Order affirmed.

*Since this opinion was written, and since the decision of this case, my attention has been called to the case of *The Lafayette Ins. Co.* v. *French* (18 How. [U. S.], 404), in which the question here involved is well and fully discussed, and the conclusion reached is the same as that I have come to. Indeed that case goes farther, and it is held that a judgment of a court in one State, got upon the service of process upon the agent therein of a foreign insurance company, is entitled to credit and to be enforced in another State. (See also *Copin* v. *Adamson*, L. R., 9 Exch., 345; S. C., 10 Moak's Eng. R., 492; *Schibsby* v. *Westenholz*, L. R., 6 Q. B., 155.) — [FOLGER, J.