think it must be regarded as in the nature of a detail of the work which the plaintiff and his fellow workmen were called upon to perform. There is evidence which would undoubtedly justify the inference that Hurley, the defendants' foreman, knew of the existence of the ladder; for, when he directed the plaintiff to assist in placing the hood upon the stack, he told him there was a ladder on the roof, and that everything was in readiness. But this fact does not strengthen the plaintiff's case; for if the use of the ladder was, as has been stated, a detail of the work, and it be assumed that it was placed in position by Hurley, or by his direction, he was, under the circumstances of the case, so far as that particular act was concerned, a co-employé of the plaintiff, for whose neglect or omission of duty the defendants were in no wise responsible, even though the plaintiff himself was not cognizant of the defective position of the ladder, and had nothing whatever to do with placing it in that position. Loughlin v. State, 105 N. Y. 159, 11 N. E. 371; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; McCampbell v. Steamship Co., 144 N. Y. 552, 39 N. E. 637; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860; Watts v. Beard, 18 App. Div. 243, 45 N. Y. Supp. 873.

But the learned trial justice rested his decision in part upon the assumption that the accident of which the plaintiff complains was in some measure, at least, due to his own negligence; and there is certainly much in the case to support such a conclusion. It must have been perfectly apparent to the plaintiff, when he reached the roof, that the ladder which he found there was not attached to the roof, and had no other support than such as was furnished by the cleat against which it rested. If, therefore, it was insecure, and its adjustment was defective, the plaintiff had quite as good an opportunity to know that fact as the defendants; and if, with this knowledge, he assumed the risk, he ought not now to be heard to complain. We do not, however, deem it necessary to discuss this branch of the case, inasmuch as the first ground which we have considered is, in our opinion, sufficient to uphold the nonsuit, and we prefer to rest our decision upon that.

The judgment and order appealed from should be affirmed, with costs. All concur.

(39 App. Div. 236.)

BUELL v. BALTIMORE & O. S. W. R. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. RAILROADS—CONSOLIDATION—ACTION—SERVICE OF PROCESS.

Two railroad companies in Ohio were, under the laws of the state, consolidated, since which time they have been operated by the consolidated company. The consolidation statute (Rev. St. Ohio, § 3384) provides that all rights of creditors and all liens on the property of either of the companies shall be preserved unimpaired, and the company shall be deemed to be in existence to preserve the same. Code Civ. Proc. § 432, subd. 1, provides for service on a foreign corporation by delivering a copy to its officers. *Held*, that service in New York on the last president of one of the consolidated companies, after the consolidation, to enforce bonds given by such company, was valid.

2. SAME—OFFICERS.

Where two railroad companies are consolidated, it will be presumed, for the purpose of enforcing the claim against one of the consolidated companies, under Rev. St. Ohio, § 3384, that the president of such company, who was in office when the consolidation took place, continued to represent such company for the purpose of service of process.

Appeal from special term, Erie county.

Bill by Franklin S. Buell against the Baltimore & Ohio Southwestern Railroad Company and others. From an order denying a motion to set aside service of summons on president of said company, defendant company appeals. Affirmed.

On the 1st day of November, 1893, the defendants, the Baltimore & Ohio Southwestern Railroad Company and the Ohio & Mississippi Railroad Company, were, by virtue of the laws of the state of Ohio, consolidated under the name of the Baltimore & Ohio Southwestern Railway Company, since which time both roads have been owned and operated by the new company. The plaintiff is the owner and holder of a number of bonds which were issued by the Baltimore & Ohio Southwestern Railroad Company prior to its consolidation. These bonds, by their terms, provide that, subject to the payment of taxes, rentals, running expenses, and the interest upon certain first-mortgage bonds, the holders thereof shall be paid the annual net earnings of the company, not exceeding, however, 5 per centum of the amount of the bonds; and in his complaint the plaintiff alleges that, after the consolidation was effected, the new company issued several series of bonds, secured by mortgages upon all of the property which came into its possession as a result of the consolidation, and that, disregarding the plaintiff's rights and without his consent, the net earnings of the consolidated companies have been applied to the payment of the interest upon these new bonds. This action is brought to have such portion of the net earnings of the new company as is applicable thereto devoted to the payment of the interest upon the plaintiff's bonds, and to enjoin the further diversion and appropriation thereof to the payment of junior debts and obligations. Upon the 1st day of November, 1893, Edward R. Bacon was. and for a long time prior thereto had been, the president of the Baltimore & Ohio Southwestern Railroad Company, having his office at No. 2 Wall street, in the city of New York; and, when that company was merged into the Baltimore & Ohio Southwestern Railway Company, Mr. Bacon became the president of the new company, and as such retained his office at the same place. Upon the commencement of this action, the Baltimore & Ohio Southwestern Railroad Company was made a party defendant, and the summons therein was served upon Mr. Bacon as its president.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

John C. Milburn, for appellant.
Frank Rumsey, for respondent.

ADAMS, J. Both the Baltimore & Ohio Southwestern Railroad Company and the Ohio & Mississippi Railroad Company owed their corporate existence, in part at least, to the laws of the state of Ohio; and their consolidation was effected by means of another law of that state known as the "Consolidation Statute," which provides, among other things, that:

"All of the rights of creditors, and all liens upon the property of either of such companies, shall be preserved unimpaired, and the respective companies may be deemed to be in existence to preserve the same; and all debts, liabilities and duties of either of said companies shall henceforth attach to the new company, and be enforced against it to the same extent as if such debts, liabilities and duties had been contracted by it." Rev. St. Ohio, § 3384.

It is quite obvious, therefore, that whatever rights the plaintiff had, as a creditor or lienor of either of the former companies, have been expressly reserved to him by force of this statute. Compton v. Railway Co., 45 Ohio St. 592, 16 N. E. 110, and 18 N. E. 380. That the plaintiff is a creditor of the Baltimore & Ohio Southwestern Railroad Company is not denied, and it is of no moment, so far as the present appeal is concerned, whether he can maintain his action or not. He has seen fit to bring it, and the sole question before us is, how may the court obtain jurisdiction of one of the parties defendant?

The Code of Civil Procedure (section 432, subd. 1) provides that personal service of a summons upon a defendant, being a foreign corporation, must be made by delivering a copy thereof within the state "to the president, treasurer, or secretary; or if the corporation lacks either of these officers, to the officer performing the corresponding functions, under another name." Had this action been commenced prior to November 1, 1893, there could be no doubt that the defendant the Baltimore & Ohio Southwestern Railroad Company would have been brought into court by service of process upon Mr. Bacon; for it is conceded that at that time the company had a corporate existence, and that Mr. Bacon was its president. It is contended, however, by the learned counsel for the appellant, that the consolidation not only worked a dissolution of both of the constituent companies, but that it likewise terminated the right of the respective officers thereof to represent their company in any manner whatever; and, with certain qualifications, we are disposed to assent to this proposition, for we entertain no doubt that for all purposes, save those specified in the statute, the prior companies were extinguished by the consolidation. Compton v. Railway Co., supra. To illustrate: We have no hesitation in declaring that upon the 1st day of November, 1893, the Baltimore & Ohio Southwestern Railroad Company became so far extinct as to be unable thereafter to transact the business of a common carrier independently of the new company into which it was then merged. Neither can we doubt that the consolidation of the two companies terminated the rights of the officers of each of them to exercise the functions of their respective offices in respect of any new business; but, as we have seen, the legislature of the state of Ohio, in providing a way by which the consolidation of two or more corporations could be effected, was very careful to preserve unimpaired the rights of the creditors of the respective companies, and to that end to expressly declare that corporate existence should be deemed to continue; and, if it be true that there was no officer of either of the consolidated companies upon whom process could be served after the consolidation took effect, the plaintiff would find himself in the anomalous, not to say absurd, situation, of having certain legal rights preserved to him by express legislative enactment, without any power whatever to enforce them. We are not prepared to believe that this was either the design or the necessary effect of the statute from which we have quoted; for if the plaintiff has a legal claim against the Baltimore & Ohio Southwestern Railroad Company, and that company is an existing, going corporation for the purposes of an action brought thereon, it must have some official representative whose duty it would

be to take notice of any steps taken by the plaintiff to enforce its claim. This is the prime object of all service of process for the commencement of a suit or other legal proceeding (Gibbs v. Insurance Co., 63 N. Y. 114; Pope v. Manufacturing Co., 87 N. Y. 137); and in this particular instance it seems to have been accomplished; for no sooner was the summons herein served upon the former president of the corporation than the corporation appeared by attorney, and moved to vacate the service. The record before us does not disclose for what term the appellant's president was elected, but it is reasonable to assume that it was for the period of one year; and there is an old rule, which may be invoked to meet the present emergency, to the effect that, where officers of a corporation are elected annually or for a definite term, they continue in office until others are elected in their place. People v. Runkle, 9 Johns. 147; 1 Wat. Corp. p. 195; State v. Bonnell, 35 Ohio St. 10–17. And, when the consolidation statute is considered in connection with this rule, we think it permits the conclusion that the appellant's president, who was in office when the consolidation took place, continued to represent the appellant, for the purpose of the service of process, down to the time this action was commenced; and, if so, then the order appealed from is right, and should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.